311 So.2d 466 (1975)
Melvin E. FULLER, d/b/a Morris Play Bar
v.
CITY OF NEW ORLEANS, DEPARTMENT OF SAFETY AND PERMITS, BUILDING INSPECTION AND PERMITS, Frank E. Robin, Director.
No. 6783.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
*467 Constant G. Marquer, Jr., New Orleans, for plaintiff-appellant.
Blake G. Arata, City Atty., Joseph E. Berrigan, Jr., Asst. City Atty., for defendants-appellees.
Before SAMUEL, LEMMON and BOUTALL, JJ.
LEMMON, Judge.
The sole issue in this case is whether that portion of a building, previously used for nonconforming purposes, remained vacant within the contemplation of the Comprehensive Zoning Ordinance of the City of New Orleans for a continuous period of six months and thus could no longer be used except in conformity with the district zoning.[1]
About January, 1974 Morris Kirshner, owner of the immovable property, leased the subject premises to Melvin Fuller for the purpose of operating a bar. The property was located in a district zoned RM-3, Multiple-Family Residential, a classification in which commercial uses were proscribed. The pertinent portion of the building had enjoyed nonconforming status by virtue of the fact that Kirshner had previously operated a bar therein for some time prior to the adoption of the zoning ordinance.[2] *468 Fuller applied for the necessary 1974 licenses, but his application was denied on the grounds that the portion of the building had lost its nonconforming status because of discontinuance of nonconforming use. Fuller then instituted this action to enjoin defendants from prohibiting issuance of the licenses. He has now appealed from a judgment denying the injunction.[3]
The evidence pertained principally to usage of the property in the calendar year 1973, during which Kirshner was licensed to operate a bar. Because of a serious illness Kirshner was hospitalized four to five months during the year, and the business did not operate on a regular basis. Kirshner contended, however, that the business had regular patrons, who frequented the place whether or not the premises were open for business, and that he did not depend on outside trade. The regular patrons were transient seamen (who rented the upstairs bedrooms) and their invited friends. Kirshner extended running credit to these patrons, who paid tabulated bills at irregular intervals.[4]
The tenants and their friends entered the building from a side entrance which led either to the upstairs rooms (which had stairway access to the bar) or into Kirshner's apartment (through which access to the bar was also available). When the main entrance to the bar was open, there was only an occasional outside customer.
Numerous witnesses, who lived or worked in the neighborhood, testified that they never saw anyone enter through the front door during 1973, although they saw tenants and others enter through the side door. A sign stating "Will be open for business in January" was posted in late 1973.
Kirshner's sales tax returns for 1973 reported no sales for January through April or for August through October. Sales in the amount of $25.00 were reported in each of the months of May, June and July. Utility records indicated that the air conditioning unit in the bar had not been used in 1973.
Nonconforming uses, which are permitted to afford constitutional protection to the owner of property, are violative of the comprehensive scheme which regulates the use of other property in the district. The zoning ordinance, however, may validly limit the nonconforming use to the period of time that the use continues in an unbroken sequence. 1 Anderson, American Law of Zoning, § 6.58, et seq (1968). When the use is voluntarily discontinued for a prescribed period of time, the ordinance may prohibit resumption of the nonconforming use.
Apparently, most statutes and ordinances require that the user intend to abandon his nonconforming use of the property. American Law of Zoning, supra; 2 Rathkopf, The Law of Zoning and Planning, Chap. 61, § 2 (3rd ed. 1972). The New Orleans ordinance, however, explicitly provides that intention to use property for nonconforming purposes does not affect the determination of whether the property has lost nonconforming status because of discontinuance of use.
In the present case the trial judge found as a fact that the premises were not used as a "public establishment" for a period in excess of six months in that "the public could not have gained entrance to the bar." The record supports this finding. While the record perhaps establishes that Kirshner intended to continue use *469 of the property for nonconforming purposes and that the premises were used by a makeshift commercial use, neither intention nor makeshift use will preserve nonconforming status, under the explicit terms of the ordinance.
Kirshner's illness was unfortunate, but the ordinance requires continuous nonconforming use of the property. The circumstances did not compel discontinuance of the business, as might be argued if operation were enjoined or if licenses were revoked. Continuous commercial use was within Kirshner's control, since he could have made arrangements at any time for continued operation of the business. His decision to do so came too late.
The judgment is affirmed.
Affirmed.
NOTES
[1] Article 12, Section 2 of the ordinance, pertaining to discontinuance of nonconforming uses, provides:

"No building or portion thereof or land used in whole or in part for nonconforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of 6 calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated. Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any nonconforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended nonconforming use shall be taken into consideration in interpreting and construing the word `vacant' as used in this section; * * *"
[2] The ground floor of the building consisted of an area used for the bar, in addition to a bedroom-kitchen apartment occupied by Kirshner. Upstairs were 6 sleeping rooms, which were rented to tenants.
[3] Although the judgment only dismissed the rule for preliminary injunction, the parties stipulated in this court that they intended the evidence to apply to the demand for permanent injunction and that any judgment rendered by us would bind them as to the merits of the action for permanent injunction.
[4] The book, in which these purchases were entered, contained an undated column of numbers on each page. Many of the numbers were even amounts, such as $10.00 and $20.00. Mrs. Kirshner explained that numerous loans were also entered in the book.

We consider this record as having little probative value as to sales made in 1973.