## Todd and Nina Badger v. Town of Ferrisburgh

[712 A.2d 911]

No. 96-411

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed May 8, 1998

*Karl W. Neuse* of *Neuse, Smith, Roper & Venman, P.C.,* Middlebury, for Plaintiffs-Appellants.

*James F. Carroll* and *Susan P. Ritter* of *Powers, English & Carroll, Ltd.,* Middlebury, for Defendant-Appellee.

**Dooley, J.** Todd and Nina Badger (property owners) appeal an environmental court decision affirming the Town of Ferrisburgh's decision to deny them a zoning permit for a three-unit dwelling. The issue on appeal is whether § 512 of the Town's zoning ordinance governing discontinuances of preexisting nonconforming uses requires, as a prerequisite to discontinuance, an intent to abandon. We hold that intent to abandon is not required by the ordinance, and affirm the environmental court's grant of summary judgment in favor of the Town.

The environmental court traced the history of the building at issue in this appeal to 1963 when it was purchased as a two-family

residential structure by the Burnets. Thereafter, the Burnets added a small apartment, making the building a three-unit dwelling. At that time, the town zoning ordinance allowed multi-family dwellings in the district in which the building is located.

In 1977, the building was conveyed to John and Ellen Laberge, who converted it into a four-family dwelling, again in compliance with the zoning ordinance. In 1980, the Town adopted a new zoning ordinance allowing only one and two-family dwellings in rural residential districts as "By Right Uses." The building is located in such a district. After 1980, the ordinance prohibited the use of any nonconforming multi-family dwellings except through an application for a Planned Residential Development (now § 528 of the current zoning ordinance). The new ordinance specifically protects preexisting nonconforming uses. As amended in 1988, § 512 of the zoning ordinance allows indefinite continuation of nonconforming uses provided the use has not been discontinued for one year.

In 1985, the Laberges conveyed the property to Ira Farnsworth, who subsequently conveyed the property to Eppe and Judith Bos in 1988. Shortly thereafter, the Boses found themselves in financial difficulty, and in 1989 foreclosure proceedings were initiated against them. In 1991, Associates National Mortgage Corporation (ANMC) became the record title owner of the property as a result of the foreclosure. In order to receive payment on its loan guarantee, ANMC turned the property over to the United States Department of Housing and Urban Development (HUD).

HUD required all tenants to leave the building, and it became vacant in October 1992. HUD auctioned the property on May 25, 1994 to the current property owners, who planned to use it as a three-family unit. By the time property owners obtained title to the building, it had been vacant for twenty-two months.

When property owners converted the building from four units to three units without seeking Town approval, the town zoning officer issued a notice of violation for "Land development without a permit; specifically, reconstruction of a house into three apartments." The property owners unsuccessfully appealed to the zoning board of adjustment. The board held that the preexisting, nonconforming-use status of the building had lapsed because the use had been discontinued for twenty-two months.

The property owners appealed to the environmental court, and both parties moved for summary judgment. Rejecting property owners' argument that § 512 of the zoning ordinance requires an

intent to abandon before an owner loses nonconforming use status by discontinuance, the court held that property owners had to comply with the current zoning ordinance, which limits the number of units to two. This appeal followed.

The appeal centers on the meaning of § 512(2) of the Town zoning ordinance, which provides:

> [A nonconforming use s]hall not be re-established if such use has been discontinued for a period of at least one year or has been changed to, or replaced by, a conforming use. Intent to resume a nonconforming use shall not confer the right to do so. If a nonconforming use is not re-established within one year, the future use of the lot or structure shall be in conformance with the provisions of these regulations.

The ordinance provision is authorized by 24 V.S.A. § 4408(b), which provides:

> [M]unicipalities may regulate and prohibit expansion and undue perpetuation of nonconforming uses. Specifically, a municipality may control:
>
> . . . .
>
> (3) Resumptions of nonconforming uses, by prohibiting such resumption if such use is abandoned for any period of time or if discontinued for six calendar months regardless of evidence of intent to resume such use; . . . .

Property owners argue that ordinance § 512(2) must be construed to require "discontinuance for a specified period of time supplemented by some overt act or failure to have acted, indicating that the non-conforming use has been abandoned." They claim that the facts in this case do not support abandonment of the preexisting nonconforming use. The Town argues that nonuse for twelve months, irrespective of abandonment or intent to abandon, is sufficient under § 512(2) and that such nonuse occurred here.

■ We evaluate these positions under a limited standard of review. We are bound by an environmental court construction of a zoning ordinance unless it is clearly erroneous, arbitrary or capricious. See *Houston v. Town of Waitsfield*, 162 Vt. 476, 479, 648 A.2d 864, 865 (1994). We also evaluate them in light of a clear legislative purpose. The prime purpose behind zoning is to bring about the orderly physical development of a community by confining particular uses to defined areas. See *Vermont Brick & Block, Inc. v. Village of*

*Essex Junction*, 135 Vt. 481, 483, 380 A.2d 67, 69 (1977). A goal of zoning is to gradually eliminate nonconforming uses because they are inconsistent with this purpose. See *In re McCormick Management Co.*, 149 Vt. 585, 589, 547 A.2d 1319, 1322 (1988). The public interest in the regulation and gradual elimination of nonconforming uses is strong, see *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 626, 572 A.2d 925, 930 (1990), and zoning provisions allowing nonconforming uses should be strictly construed. See *Hartley v. City of Colorado Springs*, 764 P.2d 1216, 1224 (Colo. 1988).

Further, we interpret a zoning ordinance under familiar rules of statutory and ordinance construction. Words in statutes and ordinances should be given their plain meaning. See *In re Stowe Club Highlands*, 164 Vt. 272, 279, 668 A.2d 1271, 1276 (1995) (when interpreting zoning ordinances, court construes words according to their plain and ordinary meaning, giving effect to whole and every part of ordinance). We adopt a construction that implements the legislative purpose. See *id.* at 281, 668 A.2d at 1277.

We acknowledge that many courts have adopted property owners' position and require an intent to abandon before the owner can lose preexisting nonconforming use status. See *Hartley*, 764 P.2d at 1222-23. Where the applicable statute or ordinance uses the term discontinuance, courts reach this result by equating the term with abandonment and then holding that abandonment requires intent to abandon. See, e.g., *Smith v. Howard*, 407 S.W.2d 139, 141 (Ky. 1966). On the other hand, some courts have held that "nonuse of the property for the time specified in a discontinuance ordinance terminates the nonconforming use regardless of intent to abandon." See *Hartley*, 764 P.2d at 1223.

We need not decide how we would rule if the governing rule or statute used only a durational discontinuance standard. The issue before us is fundamentally one of statutory or ordinance construction. See *McLay v. Maryland Assemblies, Inc.*, 306 A.2d 524, 526 (Md. 1973) (effect of cessation or discontinuance of nonconforming use must depend on language of the ordinance; under facts and language of ordinance, nonconforming use status was not extinguished); *Canada's Tavern, Inc. v. Town of Glen Echo*, 271 A.2d 664, 666 (Md. 1970) (under language of ordinance, cessation of use for six months results in loss of nonconforming use status). For two reasons, the applicable ordinance cannot be construed to require that a property owner intend to abandon a nonconforming use before the right to this status is lost.

First, the statutory authority for the ordinance, as set forth in 24 V.S.A. § 4408(b)(3), provides two alternatives from which a municipality may choose in implementing its policy on resumption of nonconforming uses. The municipality may prohibit resumption of a nonconforming use "if such use is abandoned for any period of time." Alternatively, it can prohibit resumption of such a use if it is "discontinued for six calendar months." Plainly, under the wording chosen by the Legislature, discontinuance does not mean abandonment. See *In re Stowe Club Highlands*, 164 Vt. at 279, 668 A.2d at 1276 (construe zoning provision to give effect to the whole and every part). A municipality may phrase its policy in terms of discontinuance only if the discontinuance has gone on for at least six months.[1] In context, the word discontinuance can only mean cessation, without the kind of intent associated with abandonment. The minimum duration replaces the intent element.

The Town has chosen a policy based on discontinuance, rather than abandonment. Thus, we cannot hold that the Town's ordinance acts to extinguish a nonconforming use only if there has been abandonment.

■ Second, and to reinforce the statutory meaning, the statute and the Town ordinance go on to state that "intent to resume" a nonconforming use does not confer the right to resume. See *Canada's Tavern, Inc.*, 271 A.2d at 667 (ordinance language that discontinuance operates irrespective of intent not to abandon or intent to resume makes effect of provision "explicit"). Only by splitting hairs can we distinguish between a rule based on intent to resume a nonconforming use, and one based on intent to abandon a nonconforming use. These concepts represent two sides of the same coin. By stating that the durational discontinuance rule operates irrespective of the property owners' intent to resume a nonconforming use, the Legislature and the Town were also conveying that it operates irrespective of any intent to abandon the use. As a leading zoning treatise notes:

> A discontinuance provision which specifically states that it operates to prevent and prohibit resumption of a nonconforming use after a specified period of time has lapsed,

---

[1] The statute provides that a municipality *may control* resumptions of nonconforming uses if discontinued for six months. See 24 V.S.A. § 4408(b)(3). We construe the statute as a floor that restricts the municipality from adopting a policy less favorable to the landowner, but allows a more favorable policy. See *In re White*, 155 Vt. 612, 619-20, 587 A.2d 928, 932 (1990). Thus, the Town was free to establish a longer discontinuance period before a landowner lost their right to resume a nonconforming use.

> regardless of any reservation of an intent not to abandon or of an intent to reserve the right to resume, *removes the factor of intent to abandon*; it operates even where there was no intent to abandon or even where there was an attempt *not* to abandon.

4 E. Ziegler, Rathkopf's The Law of Zoning and Planning § 51B.02, at 51B-9 (4th ed. 1996) (first emphasis added) (second emphasis in original). Other courts considering similar language have reached the same conclusion. See *Fuller v. City of New Orleans*, 311 So. 2d 466, 468 (La. Ct. App. 1975) (although most statutes and ordinances require intent to abandon, similar provision of city ordinance means that intention will not preserve nonconforming use status); *TOYS "R" US v. Silva*, 676 N.E.2d 862, 868 (N.Y. 1996) (ordinance with similar language is clear and "deems the owner's intent irrelevant"); *Darcy v. Zoning Bd. of Appeals*, 586 N.Y.S.2d 44, 45 (App. Div. 1992).

Our conclusion is not undermined by two additional arguments that property owners make. They argue that two of our decisions, *Franklin County v. City of St. Albans*, 154 Vt. 327, 576 A.2d 135 (1990), and *Town of Castleton v. Fucci*, 139 Vt. 598, 431 A.2d 486 (1981), require that we adopt their position that intent to abandon is required before preexisting nonconforming-use status is lost. Although both decisions involve the retention of nonconforming use status, neither dealt with the issue before us, but instead turned on whether any cessation of use had occurred. In *Franklin County*, we rejected the City's argument that cessation occurred because of a reduction of the level of activities in a county jail, upholding the trial court's conclusion to the contrary as not being unreasonable, irrational, arbitrary or discriminatory. See 154 Vt. at 331, 576 A.2d at 137. In *Fucci*, we held that five years of nonuse of a seasonal property constituted discontinuance, with the caveat that "we are not holding that periods of non-use, between recurring periods of seasonal use, would amount to discontinuance or abandonment." 139 Vt. at 601, 431 A.2d at 488. Neither the issues presented in those cases nor our analyses of those issues is helpful in resolving this case.[2]

Finally, we address property owners' policy argument that they should not lose nonconforming-use status based on involuntary

---

[2] If there is a determinative precedent, it is *Town of Brighton v. Griffin*, 148 Vt. 264, 270, 532 A.2d 1292, 1295 (1987), in which we noted that 24 V.S.A. § 4408(b)(3) has both abandonment and discontinuance standards, and cited with approval cases that prohibited resumption of a nonconforming use based on nonuse for a specified period. We do not believe, however, that *Griffin* explicitly resolved the issue before us.

inactivity beyond their control. As we stated above, the Legislature has adopted the policy of phasing out nonconforming uses, and the ordinance provision is consistent with that policy. To implement the phase-out policy, the Legislature and the Town can decide to establish a bright line that applies irrespective of the intent of the owner's ability to use the property. In general, a bright line aids subsequent purchasers, like property owners in this case, because they can easily ascertain whether they can use the property as a nonconforming use and, from their inquiry, determine whether they want to purchase and at what price. See *Chioffi v. City of Winooski*, 165 Vt. 37, 42, 676 A.2d 786, 790 (1996) (where landowner purchased property after period to restore nonconforming use had expired, landowner had no investment-backed interest in restoring the use, and the use is no longer reasonable); cf. *Route 4 Assocs. v. Town of Sherburne*, 154 Vt. 461, 464, 578 A.2d 112, 114 (1990) (defining term "contiguous" in zoning ordinance narrowly to require physical touching of lots promotes "certainty and reliability" of zoning regulation). The fact that property owners failed to make that inquiry in this case does not make the use of an objective standard unreasonable.

█ It is undisputed that use of property owners' building as a three-family unit had ceased for over a year. Thus, the environmental court properly held that this nonconforming use could not be resumed absent Town approval.

*Affirmed.*

**Morse, J.,** dissenting. The central issue is whether an involuntary discontinuance for the requisite statutory period of time, standing alone, is sufficient to constitute a forfeiture of a nonconforming, permitted use. In my opinion, it is not, and therefore I dissent.

I agree with the Court's conclusion that the applicable provision of Vermont's enabling legislation, 24 V.S.A. § 4408(b)(3), makes a meaningful distinction between the terms "discontinuance" and "abandonment." I also agree that this distinction effects the evidentiary burdens required in terminating a preexisting, nonconforming use. The Court, however, fails to recognize and give effect to a further legal distinction: namely, the difference between a voluntary discontinuance and one that results from circumstances beyond the control of the property owner. See, e.g., *McLay v. Maryland Assemblies, Inc.*, 306 A.2d 524, 529 (Md. 1973) (explaining the difference between a voluntary cessation of use and a cessation which is involuntary).

In general, a common law claim of abandonment requires a showing of both (1) an intention to abandon, and (2) actual abandonment in the form of an overt act, or failure to act, which carries the implication that the owner does not retain any interest in the right to continue the nonconforming use. See 1 K. Young, Anderson's American Law of Zoning § 6.65, at 678 (4th ed. 1996). Ordinarily, the burden of proving the fact of abandonment is on the party asserting it. See *Smith v. Board of Zoning Appeals*, 459 A.2d 1350, 1352 (Pa. Commw. Ct. 1983).

As an alternative, discontinuance of use for a specified amount of time has been made a statutory equivalent of abandonment. Courts differ on what evidentiary showing is required under discontinuance ordinances. Many jurisdictions continue to require a showing of both intention to abandon and actual abandonment under their discontinuance ordinances. See, e.g., *Union Quarries, Inc. v. Board of County Comm'rs of Johnson County*, 478 P.2d 181, 186 (Kan. 1970); 1 Young, *supra*, § 6.68, at 693 ("Many courts have merged the terms 'abandon' and 'discontinue' and require proof of intent to abandon although the ordinance speaks in terms of a use discontinued for a specified period of time.").

We, today, adopt the polar opposite evidentiary view and hold that nonuse for the applicable period of discontinuance satisfies both intention to abandon as well as actual abandonment, and thereby obviates any additional inquiry into the circumstances surrounding the discontinuance. In other words, under this view, mere nonuse for the statutory period creates a conclusive presumption of abandonment.

I believe the proper and more equitable view is reflected in those jurisdictions that hold that discontinuance for the statutory period of time creates a rebuttable, as opposed to a conclusive, presumption of intent to abandon. See *Metzger v. Bensalem Township Zoning Hearing Bd.*, 645 A.2d 369, 370 (Pa. Commw. Ct. 1994). Under this rationale, it is incumbent upon the party asserting abandonment to also prove actual abandonment. See *id.* And, it is the evidentiary requirement of actual abandonment that necessitates a distinction between cessations of use that are voluntary and those that are involuntary. As explained by the Commonwealth Court of Pennsylvania:

> [W]here, as here, a one-year time limitation on the right to resume the nonconforming use is imposed by the zoning ordinance, the intention to surrender the right is presumed

from the expiration of the designated period. Although because of this presumption it becomes unnecessary to prove the intent to abandon after cessation of one year, it is still necessary to show the concurrent overt acts or failure to act which indicate abandonment.

*Marchese v. Norristown Borough Zoning Bd. of Adjustment*, 277 A.2d 176, 183 (Pa. Commw. Ct. 1971) (emphasis in original omitted) (footnote omitted).

Thus, there must be proof of discontinuance for a specified period of time in conjunction with some overt act or failure to act, indicating that the nonconforming use has been abandoned. See, e.g., *Metzger*, 645 A.2d at 370 (actual abandonment cannot be inferred from nonuse alone); *City of Glendale v. Aldabbagh*, 939 P.2d 418, 421 (Ariz. 1997) (holding that town can enact an ordinance dispensing with the intent to abandon requirement but may not terminate a use simply because the statutory period of discontinuance passes; rather, some conduct within the control and attributable to the property owner must be a cause of the condition justifying the termination); *City of Minot v. Fisher*, 212 N.W.2d 837, 841 (N.D. 1973) (holding that a discontinuance statute presumed abandonment after the designated time period except in situations where the cessation of use was beyond the control of the property owner).

The implication of abandonment is negated when the discontinuance is the result of circumstances beyond the control of the property owner. See 4 E. Ziegler, Rathkopfs' The Law of Zoning and Planning § 51B.02, at 51B-23 — 51B-24 (4th ed. 1996).

> A temporary cessation, even for a lengthy period, caused by circumstances over which a property owner had no control, has been held not to constitute proof of an intent to abandon in the sense of an abandonment within the meaning of zoning ordinance provisions where the circumstances themselves negate an inference of the necessary intention to abandon a use.

*Id.*

This rationale is consistent with the historical distinction between "discontinuance" and "abandonment." See *Hartley v. City of Colorado Springs*, 764 P.2d 1216, 1222 (Colo. 1988). As explained by the Supreme Court of Colorado, discontinuance, as distinguished from abandonment, was traditionally interpreted "not to require proof of

intent to abandon so long as there was proof of actual abandonment in the form of an act or failure to act which carries an implication of abandonment." *Id.* at 1222-23 (emphasis in original omitted); see also 8A E. McQuillin, The Law of Municipal Corporations § 25.194, at 77 (3d ed. 1994) ("Historically, courts have been somewhat reluctant to read intent out of termination for nonuse. . . . [and] [w]here the nonuse is involuntary, even courts that purport to do away with the intent requirement hesitate before finding a discontinuance.").

Moreover, while I agree with the Court that we have never squarely addressed and resolved the issue before us, I believe the rationale I advocate here is supported by our prior cases construing discontinuance provisions. In particular, I am mindful of our opinion in *Town of Castleton v. Fucci*, 139 Vt. 598, 601, 431 A.2d 486, 488 (1981), where we expressed the view that cessation of use must be assessed in light of the circumstances bearing upon the nonuse, before concluding that a vested property right has been forfeited. There we stated that the court must consider "such use as an average owner would make of the property, taking into account its nature and condition" and noted "that periods of non-use, between recurring periods of seasonal use," would not amount to a discontinuance or abandonment. *Id.*

Furthermore, applying the discontinuance provision to cases of involuntary interruption would raise constitutional concerns as well. We have stated, "[w]here possible, a statute must be construed to avoid constitutional infirmities." *State v. Cantrell*, 151 Vt. 130, 134, 558 A.2d 639, 642 (1989). Allowing a conclusive presumption of abandonment to be drawn from facts beyond the control of the owner is a potentially arbitrary and unreasonable application of the law. See 4 Ziegler, *supra*, § 51B.02[3], at 51B-16 ("Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments.") (quoting *Vlandes v. Kline*, 412 U.S. 441, 446 (1973)). As the Supreme Court of North Dakota in a similar case observed, abandonment is presumed "after the designated period of nonuse has passed"; however, a due process challenge is avoided "by not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner." *City of Minot*, 212 N.W.2d at 841.

The undisputed facts in the instant case support the conclusion that the requirement of actual abandonment has not been met. It is stipulated that the property at issue was vacant for approximately twenty-two months, and that the vacancy was caused by the insol-

vency of property owners' predecessors in title, Eppe and Judith Bos. When the subject property was conveyed to the Bos' in May of 1988, they had a vested right to continue the preexisting, nonconforming use. Shortly after the conveyance, however, they experienced financial difficulties and their mortgagee initiated foreclosure proceedings. The mortgagee, in turn, was required to give title to the property to HUD, free of encumbrances and tenants, in order to receive payment on its loan guaranty. HUD auctioned the property in May of 1994, and it was listed in the auctioneer pamphlet as a "quadruplex."

Thus, there was no time period during which any of the predecessors in title voluntarily abandoned or discontinued the use of the property as a multi-family structure. On the contrary, the property was the subject of an involuntary cessation of use from its nonconforming, permitted purpose.

As a result, because the vacancy was involuntary, the discontinuance period should have been tolled. See, e.g., *Flowerree v. City of Concord*, 378 S.E.2d 188, 190 (N.C. Ct. App. 1989) (where rental property remained vacant, the use did not cease where the landlord actively sought new tenants and made repairs and renovations to attract new tenants); *Southern Equipment Co. v. Winstead*, 342 S.E.2d 524, 525 (N.C. Ct. App. 1986) (owner's failure to operate concrete mixing facility due to slump in business did not amount to cessation); *McLay*, 306 A.2d at 528-29 (no discontinuance where property owner/manufacturer ceased production for the statutory period of time due to lack of business).

Accordingly, the conduct of the new owners, in this case the Badgers, is dispositive of whether or not the nonconforming use was discontinued. As explained by the Supreme Court of Pennsylvania, "[t]he right to continue [a] nonconforming use, once established and not abandoned, runs with the land and this right is not confined to any one individual or corporation. A vested right, unless abandoned, to continue the nonconforming use is in the land." *In re Indianhead, Inc.*, 198 A.2d 522, 525 (Pa. 1964) (holding that there was no legal discontinuance under a one-year maximum discontinuance period created by ordinance where landowner established that his actions of apparent abandonment were in fact motivated by pending mortgage foreclosure proceedings, and not by an intent to abandon).

Upon purchasing the subject property, the Badgers prepared the structure as a three-family dwelling for immediate occupancy. I do not believe that a prior mortgage foreclosure should foreclose their right to continue a lawful, nonconforming use. For all the reasons previ-

ously stated, a discontinuance ordinance that is construed to effect a summary termination of a vested property right, in my opinion, is not consistent with the phase-out policy contemplated by the relevant statutes and case law. Accordingly, I would reverse.