STATE OF VERMONT

ENVIRONMENTAL COURT

```
                        }
In re: Appeal of        }
  Paul Poissant         }          Docket No. 188-10-98 Vtec
                        }
                        }
```

DECISION and ORDER

Appellant Paul Poissant appealed from a decision of the Zoning Board of Adjustment of the City of Winooski, upholding a Notice of Violation issued by the Building/Zoning Administrator.

Appellant Paul Poissant is represented by Robert F. O'Neill, Esq.; the City of Winooski is represented by Kristin C. Wright, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant Paul Poissant owns property ("the property") at 1-5 Russell Street (at the corner of Russell Street and East Spring Street) in the R-2 zoning district in the City of Winooski. The property had been Appellant's wood yard, from which he sold stove wood. As of 1946 he moved his excavation, demolition and repair business to the property from a location in Underhill, due to the property's more central location, and stored heavy equipment on the property, including trucks, a crane and a bulldozer. In 1946 he constructed a two story, two-unit residential building ("the building") on the property. Beginning in 1946, he operated an excavation and demolition business from the property, including storing excavation and demolition equipment outdoors on the property. In the 1940s Appellant brought back from Europe the necessary equipment to make new valves for Rolls Royce engines. He operated a specialty Rolls Royce repair and restoration business from the property.

In 1956, Appellant built a one-unit residential addition on the building now known as

1

1 Russell Street. By that time he had acquired a yard elsewhere in Winooski for the storage of most of his construction and demolition equipment. Since at least 1956, the property has been served by four curb cuts, two on Russell Street and two on East Spring Street, with their associated gravel drives and parking areas. From 1956 to the early 1970s, the property contained three residential units in the building: two rental units in the older two-story part, and one unit in the newer one-story part, which Appellant used for his residence and from which he ran his demolition and construction business, sale and repair of specialty automobile components business, and storage and sale of salvaged materials.

A zoning ordinance was first adopted in the City of Winooski in 1969.

In 1970, Appellant conveyed the property to Helen Shiner, but continued to maintain control over the property and to run his businesses from the property. Ms. Shiner was an officer in one of Appellant's companies and married Appellant in 1971. Shortly after their marriage, Appellant built a garage attached to the southern side of the building. It was used for storing Ms. Shiner's car. The building has not been altered, enlarged, extended or reconstructed, although it has been maintained, from the time of the addition of the garage in approximately 1971 to the November 1997 inspection.

As of approximately 1970, Appellant and his wife lived nearby at 8½ Franklin Street with his wife's aunt at her house, and used the one-story portion of the property as office space and storage for the businesses, which included the demolition and construction business, the sale and repair of specialty automobile components, and the storage and sale of salvaged materials. In 1974, Ms. Shiner reconveyed the property back to Appellant. During the 1970-1974 period during which Ms. Shiner held ownership of the property, Appellant continued to control it, to rent out the two rental units and to run his businesses from it.

Appellant built a house in Florida in 1970 and spent part of each winter in Florida. He continued to rent out the two rental units, and until the summer of 1997 continued to use the one-story portion of the building for operating his businesses when he was in Vermont. Appellant also dealt in the securities market from the property, at least on his own behalf. As of the date of trial Appellant described his securities trading as his main source of income, but we cannot find from the evidence that he ran a securities trading

business for any customers.      In 1997 Appellant sold the construction and demolition business, which had become the largest in New England and Florida, but continued to bid the jobs for the company.  As of at least 1997 Appellant is partially blind.  Since 1997 he has been disposing of his inventory of salvaged materials on the property, but continued to use the one-story side of the building to store his business records and some personal property, including to store gasoline cans during the winter for use in his truck in the summers.   The water and phone services to that side of the property have been discontinued in the winters since at least 1979.  Appellant was in Florida during the winter of 1997-1998.

As of the adoption of the interim zoning regulations in 1969, the property contained a three-unit residential building and was being used as a home occupation, with outdoor storage of materials and equipment, and a gravel rather than a paved parking area and driveway.  None of these uses of the property were non-conforming under that ordinance, which was extremely rudimentary.  Nothing about the transfer of the property to and from Appellant's wife during the period 1970 through 1974 affects analysis of the use being made of the property during that time.  Even if an abandonment provision similar to § 8.405 were  in effect during that period, the use was not abandoned, only the ownership changed.

As of the adoption of the earliest version of the current zoning ordinance in 1981, the property contained a three unit building, with an accessory garage, two units of which were in use as a residence, and one unit of which was in use as business premises on a seasonal basis at least six months of the year for the demolition and construction business, the sale and repair of specialty automobile components, and the storage and sale of salvaged materials.  Thus as of the adoption of the 1981 Zoning Ordinance, the property was a pre-existing non-conforming use as to the mixed residential and commercial use on the property, as to the outdoor storage of salvaged materials and construction equipment, and as to the use of the building for business office use and storage of business and personal property by a non-resident owner.  Because Appellant had been residing at 8½ Franklin Street, it no longer qualified as a home occupation.

Because it was a pre-existing non-conforming use as of 1981, it did not have to

receive conditional use approval or site plan approval to continue on the same basis as it was being used, that is, for two year-round residential rental units, plus a seasonal business use, including the outdoor storage. Because the business use of the property was non-conforming, it could not be expanded or altered without ZBA approval under §8.402, but there was no evidence that it was expanded or altered after 1981.

The City argues that the non-conforming commercial use of the property was abandoned, under §8.405. Unlike the analogous provisions in some other municipalities, under that section abandonment is not defined merely a discontinuance of a use for a specified period of time. (Compare, Badger v. Town of Ferrisburgh, 168 Vt. 37 (1998)). Rather §8.405 provides that a non-conforming use is abandoned for a period of six months, and therefore may not be resumed, under any one of the following three conditions: (a) if the intent of the owner to discontinue the use is apparent; or (b) if the "characteristic equipment and furnishings of the non-conforming use" have been removed from the premises and not replaced within the six month period; or (c) if the non-conforming use has been replaced by or changed to a conforming use.

Appellant's use of the property in the present case fails to satisfy any[1] of the three definitions of abandonment in §8.405. Appellant harbored no intent to discontinue the non-conforming use of the property; the characteristic equipment and furnishings of the non-conforming use, including the outdoor storage of salvaged materials, were never removed from the premises during Appellant's winters in Florida, and the seasonal non-conforming use was not replaced by or changed to a conforming use.

A chain link or openwork wire fence, appearing from the photographs in evidence to be approximately 2½ to 3 feet high, is located on the property near the corner of Russell Street and East Spring Street, within the "corner vision clearance angle" as defined by §8[2].1500. It does not obstruct vision at the intersection. As of the November 1997

---

[1] And therefore we need not address the problem of the burden of proof for abandonment.

[2] The parties agreed that the designation of this section as "9.1500" rather than "8.1500" on page VIII-10 of the zoning ordinance is a typographical error.

4

inspection, trees located on the property near the corner of Russell Street and East Spring Street obstructed vision at the intersection, but they have since been pruned and maintained so as not to obstruct vision at the intersection. As of the November 1997 inspection, a travel trailer belonging to one of the tenants in the building was located within the front yard setbacks near the corner of Russell Street and East Spring Street. It was not in use as a structure. Using the measurements shown on Exhibit 3, and drawing a line from the asterisks indicating the 75 foot distance along each street from the intersection to create the "corner vision clearance angle," it is apparent that the travel trailer was not within that angle and therefore did not impermissibly obstruct vision. However, it should not have been parked or stored in that location and has been removed.

As of the November 1997 inspection, flammable and combustible materials were stored within the structure in an unsafe manner, and elements of the electrical system were maintained in a condition which created a fire hazard. As of the November 1997 inspection, the inspector observed the presence of rodent droppings in the basement, but no evidence was presented to the Court that the property contained an accumulation of solid wastes conducive to the breeding of rodents.

The Notice of Violation issued on December 1, 1997, alleging violations observed as of November 12, 1997, was issued under the building, fire prevention, housing, health and zoning ordinances of the City. Only the zoning violations are at issue in this appeal.

The following group of alleged violations depend on the extent of the pre-existing non-conforming use and whether that use had been abandoned. We have found that as of the inspection date, Appellant was entitled to continue the following nonconforming use of the property: two year-round residential rental units, plus in the third unit a seasonal use of the building for business office use and storage of business and personal property by a non-resident owner, plus the use of graveled rather than paved parking areas and driveways, plus the outdoor storage of salvaged materials and construction equipment to the rear of the building to no greater extent than had been the case in 1981. Accordingly, the Court concludes that as of November 12, 1997, Appellant was not in violation of the following sections of the zoning ordinance, and as to those sections, Appellant's appeal is

5

GRANTED.

§11.200 - land development or change of use without permit

§11.300 - certificate of occupancy required after alteration

§8.405 - resumption of non-conforming use after abandonment

§4.102 (actually 4.103) - conditional uses in R-2 district

§8.100 - conditional uses requiring ZBA approval

§8.200 - site plan approval required for other than one and two family residential uses

§9.303(c) - paving for driveways & parking spaces

The following group of alleged violations appears to depend on the mobile home or travel trailer which has been removed, and on the conditions within the vision triangle. We have found that the travel trailer, while improperly parked, was not in use as a structure and did not obstruct the vision triangle. We have found that the fence does not obstruct the vision triangle, but that the trees did obstruct the vision triangle prior to their being pruned. Accordingly, the Court concludes that as of November 12, 1997, Appellant was not in violation of the following sections of the zoning ordinance, and as to those sections, Appellant's appeal is GRANTED.

§8.1000 - one principal structure per lot

§9.300 - off street parking requirements

§8.1500 - vision clearance at street corners (as to the travel trailer and fence)

On the other hand, the Court concludes that as of November 12, 1997, Appellant was in violation of the following sections of the zoning ordinance. As to those sections, Appellant's appeal is DENIED and the Notice of Violation is UPHELD. We note that these violations were corrected, and that as no enforcement action is before the Court at the present time, we need not determine whether they were corrected within the time established in the Notice of Violation for their correction.

§9.303(b) - parking prohibited in front setback (as to the travel trailer prior to its having been moved)

§8.1500 - vision clearance at street corners (as to the trees prior to pruning)

6

The following group of alleged violations alleges violations which do not depend on whether the uses were nonconforming, as under §8.401 non-conforming structures and uses are not insulated from safety and health regulation. We have found that a fire hazard existed on the property due to the improper storage of flammable and combustible materials within the structure and due to the condition of elements of the electrical system. We have found that the property did not contain an accumulation of solid wastes conducive to the breeding of rodents. Accordingly, the Court concludes that as of November 12, 1997, Appellant was in violation of the following sections of the zoning ordinance. As to those sections, Appellant's appeal is DENIED and the Notice of Violation is UPHELD. We note that as no enforcement action is before the Court at the present time, we need not determine whether these violations were corrected or within what period of time.

§8.401 - unsafe structures or unhealthy conditions prohibited

§9.000 - use as fire hazard prohibited

§9.500 - no unapproved fire or explosive hazard

On the other hand, the Court concludes that as of November 12, 1997, Appellant was not in violation of the following section of the zoning ordinance, and as to that section, Appellant's appeal is GRANTED.

§9.1403 - no accumulation of solid wastes conducive to the breeding of rodents or insects

Dated at Barre, Vermont, this 10th day of July, 2000.

_____
Merideth Wright
Environmental Judge

7