NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 85

No. 2021-040

| | |
|---|---|
| In re 15-17 Weston Street NOV (Keith S. Aaron, Weston Street Trust, Appellant) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | September Term, 2021 |

Thomas S. Durkin, J.

John L. Franco, Jr., Burlington, for Appellant.

Kimberlee J. Sturtevant, Office of City Attorney & Corporation Counsel, Burlington, for Appellee City of Burlington.

Michael and Caryn Long, Burlington, Pro Ses, Interested Parties.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **ROBINSON, J.** Appellants Keith Aaron and Weston Street Trust[1] appeal the trial court's summary judgment upholding a Notice of Violation (NOV) concerning the Trust's property on the basis that it was occupied by more than four unrelated adults in violation of applicable zoning restrictions. We conclude that the City is not precluded from enforcing the zoning violation on account of 24 V.S.A. § 4454 because a valid municipal ordinance establishes that if an unlawful use is discontinued for more than sixty days, resumption of the unlawful use

_____

[1] Keith Aaron is the sole trustee of the Trust, and we refer to appellants collectively as "the Trust" in this opinion.

constitutes a new violation, and we reject the Trust's alternate argument that its use was a lawful preexisting nonconforming use based on the preclusive effect of permitting proceedings in 1972 and 1994. We thus affirm.

¶ 2.    The property at issue is an individual unit (unit #1) within a three-unit building (the property) located in the City of Burlington's Residential Low Density Zoning District (RL District). In October 2018, the City issued a NOV to the Trust, alleging that unit #1 was in violation of § 5.3.2 of the Burlington Comprehensive Development Ordinance (CDO), because more than four unrelated adults were occupying the unit. The Burlington Development Review Board upheld the NOV, and the Trust appealed to the Environmental Division of the Superior Court. Two neighbors intervened in support of the NOV. In the context of cross motions for summary judgment, the Trust did not deny that more than four unrelated adults lived in unit #1, and did not contest that the applicable zoning ordinance prohibited such a use in the RL District. The Trust argued that the violation is unenforceable because it first occurred more than fifteen years ago or, in the alternative, that this enforcement action is barred by claim preclusion. The Environmental Division granted summary judgment to the City, upholding the NOV. The Trust appealed.

## I.  Undisputed Facts

¶ 3.    The undisputed facts bearing on these arguments are as follows.[2] In 1972, the owner of the property applied for and received an exemption for an "apartment house" so the

---

[2]    Although the relevant facts are not in dispute, the state of the record is somewhat confused. The City and the Trust entered into a Stipulated Statement of Uncontroverted Material Facts, which are essentially undisputed by intervenor-neighbors. The Trust's principal appeal brief indicates that, in connection with the Trust's summary judgment motion, the Trust filed a statement of undisputed facts in addition to the stipulated facts, but there is no evidence of any such statement in the record. In addition, the trial court noted that its understanding of permitting proceedings in 1972 and 1994 relating to the property was informed by the parties' uncontested but undocumented representations to the trial court; the court was not provided with the applications, supporting materials, or Zoning Board of Adjustment or Development Review Board determinations in those

property could continue operating as a three-unit apartment house in a residential district. "Apartment house" was defined as "a building or portion thereof used or designed to be used as a residence for three or more families living as units independently of one another." At the time, "family" was defined as "one or more persons occupying a dwelling unit and living as a single nonprofit housekeeping unit, but not including group quarters such as dormitories, sororities, fraternities, convents, and communes." The exemption granted to allow the owners to operate the property as an apartment house did not recite who could lawfully occupy the individual dwelling units at the property. In 1994, the owner of the property applied for conditional use approval for a fourth dwelling unit. The zoning board denied the application.

¶ 4. Keith S. Aaron acquired the property in December 1995 and transferred it to the Trust in October 2000.

¶ 5. The Trust began leasing unit #1 in October 2000. Since that time, unit #1 has been leased to and occupied by five unrelated adults, mostly college students. There have been two interruptions of unit #1's occupancy by five individuals during that period. First, during the summer of 2013, only two tenants occupied unit #1 until mid-August. Second, after all the unit #1 tenants abandoned the lease and left the property in January 2014, unit #1 remained unoccupied until June 2014. All parties agree that each of these interruptions in occupancy exceeded sixty days.

¶ 6. Effective November 2000, the applicable zoning ordinance was amended to add language defining family as "no more than four unrelated adults and their minor children" unless a property owner secured from the City "functional family unit" designation as defined by the

_____

prior proceedings. Because no party has disputed the trial court's recitation of the facts that are outside of the record, we include some of those facts in our own description.

3

ordinance. At no time during the Trust's ownership did the Trust request or obtain a "functional family unit" designation from the City with respect to the occupants of unit #1.

## II. Analysis

¶ 7. On appeal, the Trust argues that because the first violation of the use restriction occurred more than fifteen years before the NOV, the fifteen-year statute of limitations provided by 24 V.S.A. § 4454(a) has run. The Trust contends that the City's ordinance limiting the safe harbor provided by the statute when a violation is discontinued for more than sixty days is unenforceable because the City has no authority to pass such an ordinance. Alternatively, the Trust argues that the City is precluded from pursuing this NOV because the lawfulness of the current use of unit #1 was established by operation of claim preclusion as a result of the 1972 and 1994 permitting proceedings. The Trust contends that because of this preclusion, the present use of unit #1 is a lawful, preexisting nonconforming use.

¶ 8. We review summary judgment rulings without deference to the trial court. Tanzer v. MyWebGrocer, Inc., 2018 VT 124, ¶ 17, 209 Vt. 244, 203 A.3d 1186. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).

### A. Discontinuance of the Zoning Violations

¶ 9. The Trust argues that the City cannot enforce the ordinance prohibiting more than four unrelated adults from occupying a unit in the RL District because the use violation first arose more than fifteen years before the City issued the NOV. It points to 24 V.S.A. § 4454(a), which provides that enforcement proceedings "relating to the failure to obtain or comply with the terms and conditions of any required municipal land use permit" must be instituted within fifteen years from the date the alleged violation first occurred, and our decision in In re 204 North Avenue NOV, which held that this statutory limitation on enforcement actions applies to use violations. 2019 VT 52, ¶ 7, 210 Vt. 572, 218 A.3d 24. The Trust does not contest that § 5.3.2 of Burlington's

4

CDO purports to remove from this statutory safe harbor violations that have resumed after a discontinuance of more than sixty days, and that if valid, the ordinance would defeat the Trust's reliance on § 4454(a). Rather, the Trust contends that the ordinance is invalid because the City had no authority to enact such an ordinance absent express legislative authorization; the Legislature has not adopted any standards to guide municipalities with respect to discontinuances of zoning violations; and the ordinance conflicts with § 4454(a) as we interpreted that provision in our 204 North Avenue NOV decision. Therefore, the Trust contends that it is entitled to the benefit of § 4454(a) and the City cannot enforce the zoning violation.

¶ 10. There is no real dispute that absent a valid municipal ordinance impacting its application in this case, the fifteen-year limitation in 24 V.S.A. § 4454(a) would preclude the City's enforcement action, and that if CDO § 5.3.2 is valid, then the Trust cannot take advantage of the fifteen-year statute of limitations because the challenged use was discontinued for more than sixty days within the fifteen years prior to the NOV. We conclude that the City is authorized to adopt § 5.3.2 pursuant to its general authority to regulate zoning; that the Legislature's enactment of a specific statute relating to discontinuances of preexisting nonconforming uses does not suggest that the Legislature intended to restrict municipalities from adopting provisions relating to discontinuances of zoning violations; that the Legislature's delegation of authority to municipalities to adopt ordinances like § 5.3.2 does not fail for lack of guiding standards; that § 5.3.2 does not conflict with our application of § 4454(a) in the 204 North Avenue NOV case; and that § 5.3.2 is consistent with and promotes the goals of zoning. For these reasons, we conclude that § 5.3.2 is valid and thus § 4454(a) does not bar the City from pursuing the NOV at issue.

¶ 11. Section 4454(a) of Title 24 provides that "[a]n action, injunction, or other enforcement proceeding relating to the failure to obtain or comply with the terms and conditions of any required municipal land use permit may be instituted . . . within 15 years from the date the

5

alleged violation first occurred and not thereafter." In <u>204 North Avenue NOV</u> we rejected the contention that this statutory restriction applies only to structural violations as opposed to "use" violations. 2019 VT 52, ¶ 6. We based our conclusion on the plain language of the statute, which does not distinguish between structural and use violations; the statute's reference to the date an alleged violation "first occurred," which was consistent with the statute's application to ongoing use violations; and the purpose of the statute, which was to "streamline title searches and increase confidence in property ownership by limiting the time to enforce <u>all</u> zoning violations." <u>Id</u>. ¶¶ 6-8. Accordingly, because the parties in this case stipulated that since October 2000 unit #1 has been leased to and occupied by five unrelated adults, at the time of the 2018 NOV, § 4454(a) precluded the City from prosecuting the ongoing zoning violation unless one or both of the periods of discontinuance of the violation in 2013 and 2014 restarted the limitations clock.

¶ 12. The Trust concedes, and we agree, that if CDO § 5.3.2 is valid, it did effectively restart the clock, and § 4454(a) does not pose an obstacle to the City's enforcement action. That ordinance provides:

> Although not subject to enforcement action . . . uses, structures, and lots which are deemed to be controlled by . . . 24 VSA Sec. 4454, shall be considered violations that are not considered legal to any extent and shall in no event be granted the consideration or allowances of nonconforming structures, uses, and lots. Thus, no change, alteration, enlargement, and reestablishment after discontinuance for more than sixty (60) days or reconstruction after an occurrence or event which destroys at least 50% of the structure in the judgment of the city's building inspector shall be permitted, except to conforming use, structure, or lot.

CDO § 5.3.2. Unit #1's occupancy violation has been discontinued twice for more than sixty days within six years of the NOV in this case. Thus, this ordinance, if valid, would defeat the Trust's reliance on the limitation in § 4454(a).

¶ 13. The City's authority to enact § 5.3.2 derives from the authority the Legislature has conferred on municipalities to regulate land development. The Legislature has given

6

municipalities that have adopted a plan through their bylaws the authority to "define and regulate land development in any manner that the municipality establishes in its bylaws, provided those bylaws are in conformance with the plan and are adopted for the purposes set forth in [24 V.S.A. § 4302]. 24 V.S.A. § 4410; see also 24 V.S.A. § 4411 (providing that municipalities "may regulate land development in conformance with [their] adopted municipal plan" and specifically stating that zoning bylaws may "permit, prohibit, restrict, regulate, and determine land development, including . . . specific uses of land"). This broad municipal power may be exercised only within the scope of the delegation by the State, and not in a manner that conflicts with state law governing zoning. State v. Sanguinetti, 141 Vt. 349, 353, 449 A.2d 922, 925 (1982). The Trust has not identified any express limitation on municipal authority to adopt such a provision regulating discontinuances of zoning violations.

¶ 14. Nor are we persuaded that the statutory scheme reflects an implicit restriction on municipal authority to adopt such an ordinance. The Trust notes that the Legislature has expressly authorized municipalities to regulate and prohibit expansion and undue perpetuation of lawful preexisting nonconformities by specifying "a time period that shall constitute abandonment or discontinuance of [a] nonconforming use, provided the time period is not less than six months." See 24 V.S.A. § 4412(7)(A)(i). The Trust suggests that because the statutes include no comparable express authorization for municipalities to specify a time period that constitutes discontinuance of a zoning violation that is otherwise shielded from enforcement action by § 4454(a), we should infer that the Legislature did not intend to authorize ordinances like § 5.3.2.

¶ 15. We reject this argument for two reasons. First, the provision relating to municipal ordinances regulating discontinuances of nonconforming uses is found within a statutory subsection that <u>requires</u> municipal bylaws to define how nonconformities will be addressed. See 24 V.S.A. § 4412(7) ("All bylaws shall define how nonconformities will be addressed, including standards for nonconforming uses . . . ."). In this context, we do not infer that the Legislature

7

viewed the provision relating to discontinuances of preexisting nonconformities as a necessary grant of authority rather than a means to comply with the mandate of the subsection. Second, the provision relating to nonconformities authorizes municipalities to specify a time period that will constitute a discontinuance of a nonconforming use, "<u>provided</u> the time period is not less than six months." <u>Id</u>. § 4412(7)(A)(i) (emphasis added). Given the six-month minimum, this provision may readily be viewed as a <u>limitation</u> on municipal authority to adopt an ordinance determining a time period that constitutes a discontinuance of a nonconforming use rather than a <u>grant</u> of such authority. Cf. <u>Badger v. Town of Ferrisburgh</u>, 168 Vt. 37, 41 n.1, 712 A.2d 911, 914 n.1 (1998) (describing six-month minimum in predecessor statute to § 4412(7)(A)(i) as "a floor that restricts the municipality from adopting a policy less favorable to the landowner, but allows a more favorable policy").

¶ 16.  We also disagree with the Trust's suggestion that because there is no comparable statutory minimum period to qualify as a discontinuance of a zoning violation, any purported delegation of authority to municipalities to define discontinuances in the zoning-violation context is unacceptably standardless and therefore unenforceable. Even in the context of preexisting nonconforming uses, municipalities have broad authority, subject to the six-month minimum, to establish the period of time that gives rise to a discontinuance. See 24 V.S.A. § 4412(7)(A)(i) (providing that minimum time period to constitute discontinuance of preexisting nonconforming use is six months, but establishing no other constraints on municipal authority to choose their own period). See also <u>Badger</u>, 168 Vt. at 41 n.1, 712 A.2d at 914 n.1 (recognizing that predecessor statute allowed municipalities to adopt policies defining discontinuance of preexisting nonconforming uses in way that is more favorable to landowners than six-month minimum). Nothing in the statutory provision relating to discontinuances of preexisting nonconforming uses compels a uniform temporal definition of discontinuance, and the only guidance in that statute as

8

to the policies that should shape a municipality's exercise of its discretion is a reference to the broad purposes of zoning regulation set forth in 24 V.S.A. § 4302.

¶ 17. There is nothing incongruous about a statutory structure that provides even greater flexibility to municipalities to set a shorter minimum period that constitutes discontinuance in the context of zoning violations. In contrast to lawful preexisting nonconforming uses, which were by definition legal at some time before a statutory or zoning law change, zoning violations were never permitted. See 24 V.S.A. § 4303(15) (defining "nonconforming use" as "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws"). For this reason, it is not surprising that the Legislature has not restricted municipal authority by establishing a statutory minimum period to constitute a discontinuance of a zoning violation. We need not determine in this case whether a reasonable application of § 4454(a) requires municipalities to wait some minimum period of time before treating the cessation of a violation as a discontinuance; in this case the sixty-day minimum reflects a reasonable exercise of the City's authority.

¶ 18. Moreover, we reject the suggestion that § 5.3.2 conflicts with § 4454(a) as we construed that statute in 204 North Avenue NOV. The Trust points to our reliance in that decision on the statute's reference to the date an alleged violation "first occurred," and argues that the implication of our decision in 204 North Avenue NOV is that once a use violation "first" occurs, a municipality cannot enforce subsequent violations after a period of fifteen years elapses, regardless of whether the violation persisted continuously throughout that period, or even whether it continued or recurred at all following an initial violation. Nothing in our 204 North Avenue NOV decision reads out of the law a requirement that a violation be continuous to qualify for the safe harbor established by § 4454(a). To the contrary, our analysis in that case assumed that a use violation subject to § 4454(a) would be an ongoing use violation. In considering the significance of the statutory reference to the date a violation "first occurred," we said, " '[f]irst occurred' only

9

makes sense for <u>ongoing violations</u>—such as use violations." <u>In re 204 N. Ave. NOV</u>, 2019 VT 52, ¶ 7 (emphasis added). And we noted that treating use violations as exempt from the limitation in § 4454(a) would "result in a statute of limitations that authorizes the City to pursue use violations for <u>so long as they continue</u>." <u>Id</u>. ¶ 8 (emphasis added). We need not decide in this case whether a discontinuance in unlawful use of some period of time may sever the applicability of § 4454(a) even in the absence of a municipal ordinance such as § 5.3.2; in this case, § 5.3.2 establishes the time period that constitutes a discontinuance.

¶ 19. Finally, we note that our understanding of the statutory scheme is consistent with the general policy in zoning law that favors gradual elimination of nonconforming uses that are inconsistent with the orderly development that zoning laws are designed to promote. See <u>Badger</u>, 168 Vt. at 39-40, 712 A.2d at 913 ("The prime purpose behind zoning is to bring about the orderly physical development of a community by confining particular uses to defined areas. A goal of zoning is to gradually eliminate nonconforming uses because they are inconsistent with this purpose." (citing <u>Vt. Brick & Block, Inc. v. Vill. of Essex Junction</u>, 135 Vt. 481, 483, 380 A.2d 67, 69 (1977))). By contrast, the Trust's interpretation would lead to extremely incongruous outcomes. If a landlord rented a unit to five unrelated individuals for two months and subsequently returned to a lawful use of the unit thereafter, then, in the absence of an enforcement action, after fifteen years, any subsequent owner of the property would be free to resume the unlawful use of the unit with no exposure to an enforcement action. Zoning violations would be treated far more favorably than lawful preexisting nonconforming uses, and on the basis of long ago unidentified or unenforced violations, the City would be powerless to bring a property that was once in violation of use restrictions into conformity with the applicable zoning laws. We do not believe the Legislature intended such a result. See <u>Schlansky v. City of Burlington</u>, 2010 VT 90, ¶ 8, 188 Vt. 470, 13 A.3d 1075 ("In looking to the statutory language as an expression of legislative intent, we

presume the Legislature intended an interpretation that furthers fair and rational consequences, and not one that would lead to absurd or irrational consequences.") (citations omitted).

¶ 20. For all of these reasons, we conclude that CDO § 5.3.2 is valid, and that § 4454(a) therefore poses no obstacle to the City's enforcement action.

### B. Claim Preclusion and the 1972 and 1994 Permitting Proceedings

¶ 21. The Trust argues that the lawfulness of occupancy of unit #1 by more than four unrelated individuals was established on the basis of claim preclusion by virtue of the 1972 and 1994 permitting proceedings.[3] In particular, the Trust contends that the City was party to permitting proceedings involving the property that includes unit #1 in 1972 and 1994, and that the City's failure in the context of those cases to impose conditions expressly limiting the occupancy of unit #1, or to seek to enforce any limit on the number of unrelated individuals occupying unit #1, precludes the City from now seeking to enforce a zoning violation based on such occupancy. The Trust contends that the City's inaction in 1972 and 1994 essentially renders occupancy by more than four adults a legal, preexisting nonconforming use.

¶ 22. Claim preclusion applies generally in zoning cases as in other areas of the law. In re Carrier, 155 Vt. 152, 157-58, 582 A.2d 110, 113 (1990) (citation omitted). Thus, for example, "a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions had occurred or other considerations materially affecting the merits of the request have intervened." Id. (quotation omitted). Even assuming, without deciding, that this principle extends

---

[3] The Trust does not contest on appeal that absent claim preclusion based on one or both of these proceedings, occupancy of unit #1 by five unrelated adults, mostly students, was not a permitted use even prior to the November 2000 amendment. See In re John Mentes, No. 132-6-00 Vtec (Vt. Envtl. Ct. Oct. 22, 2001), https://www.vermontjudiciary.org/sites/default/files/documents/ecrt132600docmsj.pdf [https://perma.cc/XKA2-Q65N](holding that housing unit occupied by seven college students fell outside of definition of "family" because it constituted "group quarters" under pre-2000 ordinance).

to enforcement actions and could preclude a zoning administrator from enforcing a zoning violation that the administrator could have but failed to raise in a prior enforcement proceeding, the Trust has not met its burden of establishing that either the 1972 or the 1994 proceeding precluded this enforcement action or rendered the use of unit #1 lawful.

¶ 23. For a party to successfully preclude a claim based on previous litigation, the "parties, subject matter, and causes(s) of action in both matters [must be] the same or substantially identical," and the claim must be one that was or "should have been litigated in the prior proceeding." Faulkner v. Caledonia Cnty. Fair Ass'n, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103 (citation omitted). The Trust's argument that the City is precluded from pursuing this enforcement action based on claim preclusion from one or both of the pre-2000 proceedings fails for at least two reasons.

¶ 24. First, there is no record evidence or clear agreement among the parties that occupancy of unit #1 was at issue, or "substantially identical" to a claim that was at issue, in either of the prior permitting proceedings. The parties have represented that the issue in the 1972 permitting proceeding was whether the owner should receive an exemption to allow them to operate the property with an already existing third dwelling unit. Likewise, the parties have represented that the 1994 proceeding involved an application for a conditional use application to use a fourth dwelling unit on the property. There is no record evidence, or even representation by the parties, that any substantive matter relating to unit #1's occupancy was raised or addressed in either proceeding.

¶ 25. Second, we have no basis for concluding that the City should have raised issues relating to the occupancy of unit #1 in either proceeding. Both proceedings involved the number of dwelling units that could exist on the property; neither purported to deal with the occupancy of any units. Both were permitting proceedings, not enforcement proceedings. Neither related to unit #1 in any way. Because the claim at issue in this case was not one that was, or should have

been litigated in a prior proceeding, claim preclusion does not apply here, and use of the property

to house more than four unrelated adults is not a preexisting nonconforming use.

    <u>Affirmed</u>.

                      FOR THE COURT:


                      _____

                      Associate Justice