VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

Docket No. 139-12-18 Vtec



| Down River Investments, LLC CU |
| --- |

## ENTRY REGARDING MOTION

Title:          Motion for Summary Judgment Motion

Filer:          Stephen F. Coteus, attorney for the Town of Sharon

Filed Date:     June 30, 2020

Response in Opposition filed on September 8, 2020, by Marc D. Nemeth, attorney for Down River Investments, LLC.

Reply in Support of the Town of Sharon's motion for summary judgment filed on September 24, 2020, by Stephen F. Coteus, attorney for the Town of Sharon.

This motion is **GRANTED**.

In this matter, Down River Investments, LLC ("Appellant") appeals a Town of Sharon Development Review Board ("DRB") decision denying Appellant's application for a conditional use permit for the construction of a 50' x 30' duplex on Appellant's property, located at 2911 Vt. Rt. 14, Sharon, Vermont ("the Property").  The Town of Sharon Development Review Board ("DRB") denied the application on the basis that the structure did not satisfy the requirements for a substantial improvement of an existing nonconforming structure and  the Town of Sharon Flood Hazard Bylaws prohibited construction in a Fluvial Erosion Hazard Area.  In re: Down River Investments LLC, Findings and Decision, at 2 (Town of Sharon Dev. Rev. Bd. Nov. 23, 2018).

*Entry Regarding Motion*                                                    Page **1** *of* **11**

*Down River Investments, LLC CU, No. 139-12-18 Vtec (EO on SJ motion) (Vt. Super. Ct. Envtl. Div. Mar. 6, 2021) (Durkin, J.)*

Appellants timely appealed to this Court. Presently before the Court is the Town's motion for summary judgment on Appellants' Statement of Questions 1–5.[1]

The Town of Sharon ("Town") is represented by Stephen F. Coteus, Esq.; Down River Investments, LLC is represented by Marc D. Nemeth, Esq.

## Factual Background

We recite the following background solely for the purpose of deciding the pending partial summary judgment motion. These recitations do not constitute factual findings, since factual findings cannot occur until after the Court has completed a trial. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.); *see also* Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14.

1.      On October 26, 2010, the Town of Sharon Planning Commission prepared and proposed a set of bylaws and held a public hearing on the proposed bylaws. The proposed bylaws were then transmitted to the Town of Sharon Selectboard ("Selectboard") for consideration and a further hearing.

2.      On November 29, 2010, the Selectboard held a public hearing on the proposed bylaws.

3.      On December 6, 2010, the Selectboard adopted Flood Hazard Area Bylaws ("FAHB"), pursuant to 24 V.S.A. Ch. 117.

4.      Down River Investments, LLC ("Appellant") purchased property, located at 2911 Vt. Rt. 14, Sharon, Vermont ("the Property") in 2016. The Property is located entirely within the White River Fluvial Erosion Hazard Area ("FEH").

5.      The sole principal of Down River Investments, LLC is Mr. Walter Radicioni.

6.      In 1978 the Property was used for commercial purposes including retrieving gravel and stone crushing, as well as a residential use. The Property included three buildings: a rear building, a trailer/mobile home, and a barn.

---

[1] In their response in opposition to the Town's motion for summary judgment, Appellant withdrew Question 1 from their Statement of Questions. *See* Appellant's Reply is Opposition to Motion for Summary Judgment filed on Sept. 8, 2020, at 2.

7.     The last tenants to use the mobile home on the Property were Dale Perkins and Emily Perkins.  Appellant's Aff. at 3, filed on Sept. 8, 2020.

8.     In 2016, Appellant tore down portions of the mobile home structure, leaving only the floor portion of the structure.  After those portions of the structure were removed, the only improvements remaining on the Property were the electrical, plumbing, and septic systems serving the property.  The remaining floor was used by Appellant for storage of material such as metal roofing.  Id. at 3.

9.     In the summer of 2017, Appellant removed the remaining portions of the mobile home.

10.    Appellant applied on September 8, 2018 to the DRB for a conditional use permit.  The application sought to site a 50' x 30' duplex on the Property where the trailer/mobile home once was located.

11.    On November 23, 2018, the DRB denied Appellant's application.

12.    On December 22, 2018, Appellant timely appealed the DRB's decision to this Court.

## Legal Standard

We begin our analysis by reciting the general standard that to prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" on the legal issues presented.  V.R.C.P. 56(a), made applicable here through V.R.E.C.P. 5(a)(2); In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 18 (citing In re Diverging Diamond Interchange SW Permit, 2019 VT 57 ¶ 19.  When considering any motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.  In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material."  White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).  However, "[o]nce a claim is challenged by a properly supported motion for summary judgment, the nonmoving party may not rest upon the allegations in the pleadings, but must come forward with admissible evidence

*Entry Regarding Motion*                                                                                           *Page 3 of 11*

*Down River Investments, LLC CU, No. 139-12-18 Vtec (EO on SJ motion) (Vt. Super. Ct. Envtl. Div. Mar. 6, 2021) (Durkin, J.)*

to raise a dispute regarding the facts." Lawson v. Halpern-Reiss, 2019 VT 38, ¶ 21, 210 Vt. 224 (*quoting* Gross v. Turner, 2018 VT ¶ 8, 208 Vt. 112).

## Discussion

The Town moves for summary judgment on all of Appellant's Questions. Since Appellant has withdrawn Question 1, we need not address it in this decision. *See* Appellant's Reply in Opposition to Motion for Summary Judgment filed on Sept. 8, 2020, at 2 (withdrawing Question 1). Appellant's Questions 2–5 touch upon the adoption and enforceability of the Town of Sharon's Flood Hazard Area Bylaws ("FAHB"); whether the boundaries of the White River Fluvial Erosion Hazard Area ("FEH") were arbitrarily determined or vague; whether Appellant's property is a preexisting nonconforming use; and whether the Town has inconsistently granted permits within the FEH. *See* Appellant's Statement of Questions on Appeal filed on April 5, 2019, at 1–2. We address the remaining questions in order below.

### I.    *Question 2: Whether the FHAB violates the FHAB § 2 Statement of Purpose.*

Appellant's Question 2 concerns whether the Town's adoption and enforcement of the FHAB violates the FHAB's Statement of Purpose. More specifically, Appellant asks whether the Town's adoption and enforcement of the FHAB violates its Statement of Purpose by failure to:

> (a) Implement the goals, policies and recommendations of the current municipal plan; (b) Avoid and minimize the loss of property and the disruption of commerce; and (c) Ensure that the selection, design, creation and use of development is reasonably safe and accomplished in a manner that is consistent with public wellbeing.

*See* Appellant's Statement of Questions at 1 (citing portions of FHAB § 2(1)–(3)).

The Town argues that the FHAB Statement of Purpose is not independently enforceable as it includes general and aspirational language, which does not constitute an enforceable regulatory standard. *See* Town's Motion for Summary Judgment filed on June 30, 2020, at 6.

Generally, municipal bylaw statements of purpose have "no direct regulatory effect." In re Meaker, 156 Vt. 182, 185 (1991) (*citing* Kalakowski v. John A. Russell Corp., 137 Vt. 219, 225 (1979) (holding that a town plan was "advisory")). Indeed, "[b]road policy statements phrased as nonregulatory abstractions are not equivalent to enforceable restrictions." In re Chaves Act 250

*Entry Regarding Motion*                                                                                          Page **4** *of* **11**

*Down River Investments, LLC CU*, No. 139-12-18 Vtec (EO on SJ motion) (Vt. Super. Ct. Envtl. Div. Mar. 6, 2021) (Durkin, J.)

<u>Permit</u>, 2014 VT 5, ¶ 38, 195 Vt. 467 (*quoting* <u>In re John A. Russell Corp.</u>, 2003 VT 93, ¶ 16, 176 Vt. 520 (mem.)). The Vermont Supreme Court has held that a "general statement of the legal effect of [a] zoning regulation rather than a specific zoning restriction," placed in the general purpose of the bylaws, does not constitute enforceable regulatory language. <u>In re Wagner & Guay Permit</u>, 2016 VT 96, ¶ 26, 203 Vt. 71 *overruled on other grounds by* <u>In re Confluence Behav. Health, LLC</u>, 2017 VT 112, ¶ 11–14, 206 Vt. 302; *see also* <u>Regan v. Pomerleau</u>, 2014 VT 99, ¶ 17, 197 Vt. 449 (holding that a statement of "principles," preceding the City's Comprehensive Development Ordinance review standards, provided no clear enforceable standards to determine compliance and merely explained the policy interests and purpose of the ordinance); <u>In re Walsh</u>, No. 122-6-09 Vtec, slip op. at 16–17 (Vt. Envtl. Ct. Dec. 09, 2009) (Wright, J.) (concluding that zoning regulation "objectives and guidelines" were not independently enforceable).

Here, FHAB § 2 is not a mandatory requirement that is independently enforceable; § 2 contains no specific criteria applicable to the merits of a conditional use approval and includes "hortatory, not regulatory provisions." <u>Appeals of Perrine</u>, Nos. 221-12-03 Vtec and 38-3-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 30, 2004) (Wright, J.) (citation omitted); <u>Walsh</u>, No. 122-6-09 Vtec at 16 (Dec. 09, 2009). The language of FHAB § 2, which seeks to "avoid and minimize" losses of property and "ensure . . . development is . . . reasonably safe," is broadly aspirational rather than mandatory and sets forth no specific enforceable standards. *See* <u>Regan</u>, 2014 VT 99, ¶ 16 (stating that a "purpose statement" was unenforceable where the language directed that "emphasis on architectural details and form is encouraged . . . and historic development patterns are reinforced"); <u>In re JAM Golf, LLC</u>, 2008 VT 110, ¶¶ 13–14, 185 Vt. 201 (holding that an ordinance which required design to "protect" natural resources had no enforceable standard). This language provides guidance and context to the administration of the bylaws, rather than definitive and mandatory standards.

We therefore **GRANT** the Town's motion for summary judgment on Question 2 of Appellant's Statement of Questions and **DISMISS** Appellant's Question 2.

*Entry Regarding Motion*                                                                                    *Page 5 of 11*

<u>*Down River Investments, LLC CU*</u>*, No. 139-12-18 Vtec (EO on SJ motion) (Vt. Super. Ct. Envtl. Div. Mar. 6, 2021) (Durkin, J.)*

## II.    Question 3: Whether the FEH area boundaries were arbitrarily determined, are defined by an improperly adopted map, or are unreasonably vague.

Appellant's Question 3 asks if "the boundaries of the Fluvial Erosion Hazard area, as delineated by a Fluvial Erosion Hazard Zone Map, are arbitrarily determined, are defined by an improperly adopted map and/or are unreasonably vague?"  Appellant's Statement of Questions at 2.  The Town argues that this Question is outside the scope of this appeal. The Town argues that the Vermont Agency of Natural Resources ("ANR") is tasked with designating and determining fluvial erosion hazard ("FEH") areas.  Therefore, neither the DRB nor this Court has authority to unilaterally amend or designate the boundaries of the FEH to exclude Appellant's property.  For the reasons below, we agree with the Town.

The scope of a *de novo* appeal before this Court is defined by the powers of the municipal panel below, and thus this Court's review is limited by the substantive standards applicable in the proceeding before DRB.  10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader.").  Here, the DRB's review of Appellants conditional use application was limited to the FHAB.  If the DRB was without authority to address legal issues presented by Appellant's Questions, this Court is without authority to address such issues as well.

Pursuant to 10 V.S.A. § 753 (b), ANR is tasked with providing municipalities with flood hazard areas and flood hazard area maps.  From ANR's designation of flood hazard areas and maps, a municipality may adopt zoning bylaws which "manage all flood hazard areas designated pursuant to 10 V.S.A. § 753."  24 V.S.A. § 4424 (a)(2)(A)(iii); *see also* FHAB § 2.4 (stating that the purpose of the bylaw is to manage flood hazard areas designated pursuant to 10 V.S.A. § 753).  More specifically, a municipality may adopt bylaws that "[r]egulate all land development in a flood hazard area . . . except development that is regulated under 10 V.S.A. § 754."  24 V.S.A. § 4424 (a)(2)(B)(v).  While a municipality may regulate land development in a flood hazard area, ANR retains the ability to review applications for land development. 24 V.S.A. § 4424 (a)(2)(D)(i) (stating that no permit for "new construction or substantial improvement" shall be granted for a flood or other hazard area until after" both an Administrative Officer and ANR have received a

copy of the application and are provided opportunity to comment); 24 V.S.A. § 4424 (a)(2)(D)(ii) (noting that ANR may delegate its authority to a municipal representative "to review and provide technical comments on a proposed permit for new construction or substantial improvement in a flood hazard area. Comments provided by [the delegated] representative" are not binding upon the municipal panel rendering the permit determination).

FHAB § 4.1 provides that the "Fluvial Erosion Hazard (FEH) area as determined on the most current Fluvial Hazard Area Map published by [ANR] . . . is hereby incorporated by reference and declared to be part of these bylaws." The FHAB § 4.3 presumes as accurate "the information presented on [ANR's Fluvial Hazard Area] maps." In addition, the FHAB provides that interpretation of "any uncertainties with respect to the boundaries of the Fluvial Erosion hazard area, the location of the boundary shall be determined by the [Administrative Officer ("AO")]" and if the applicant disagrees with the AO's decision, they may seek "a letter of determination from the Vermont Agency of Natural Resources . . . ." FHAB § 4.3(2).[2]

The FHAB does not contain provisions that otherwise regulate the location of flood hazard area boundaries. *See* FHAB §§ 4.1–4.3, 6.3, 7.1–7.3. The authority to regulate the boundaries and calculations for flood hazard areas rests with ANR. 10 V.S.A. § 753 (b); *see also* In re Korrow Real Est., LLC Act 250 Permit Amend. Application, 2018 VT 39, ¶ 11, 207 Vt. 274 (noting that ANR "may separately assess the geomorphology and erosion hazards of a project site to determine the [FEH] area [and] may also conclude that the FEH area applies to lands that lie outside" the National Flood Insurance Program and Federal Emergency Management Agency).

In this appeal, it is undisputed that Appellant's property is located entirely within the FEH zone, as designated by ANR. Here, Appellant challenges ANR's basis for the boundaries of the Fluvial Hazard Area Map, contending that the FEH mapping ends arbitrarily at the westerly boundary of Route 14 and that the mapping calculation does not consider ground elevations. *See* Jeffrey S. Goodrich Aff. at 5–6, filed on Sept. 8, 2020. While we recognize Appellant's concerns challenging the ANR's calculations determining the FEH boundary lines, as the DRB has no

---

[2] Appellants have made no representation that a clarification was sought from the AO or that a letter of determination was sought from ANR challenging the location of Appellant's property as within the FEH.

*Entry Regarding Motion*                                                                                      *Page 7 of 11*

*Down River Investments, LLC CU*, No. 139-12-18 Vtec (EO on SJ motion) (Vt. Super. Ct. Envtl. Div. Mar. 6, 2021) (Durkin, J.)

authority to amend the FEH boundaries, this issue is beyond the scope of this appeal. Here, whether the Flood Hazard Area boundaries are arbitrarily drawn is a matter for ANR to consider. *See* Couture Subdivision Permit, No. 53-4-14 Vtec, slip op. at 4–6 (Vt. Super. Ct. Envtl. Div. Feb. 23, 2015) (Durkin, J.) (stating that where town subdivision regulations do not contain provisions that regulate the location or suitability of a wastewater treatment system, issues of compliance with state regulations are a matter for ANR to decide and are outside the scope of a subdivision appeal).

For this reason, we conclude that the issue raised by Question 3 is beyond the scope of this Court's jurisdiction in this appeal. We therefore **GRANT** the Town's motion for summary judgment on Question 3 of Appellant's Statement of Questions and **DISMISS** Appellant's Question 3.

### III. *Question 4: Whether Appellant's property is a pre-existing nonconforming structure.*

Appellant's Question 4 asks whether "there is evidence to support findings that Down River is benefitted by the pre-existing non-conforming and continuous use of a trailer home on the Subject Property." The Town has also moved for summary judgment on this Question, arguing that Appellant's use was discontinued and therefore any rights in connection with preexisting nonconforming use of the trailer home lapsed before the pending permit application was submitted. *See* Town's Motion for Summary Judgment at 13. The Town alleges that the Property was last occupied in 2010, that substantial portions of the property were removed in 2016, and that the remaining portions of the property were removed in the summer 2017. Appellant counters that the structure was not abandoned as the plumbing, electrical, and floor remained intact at the property in 2016.[3] Appellant also argues that the property was being used for storage in 2016, until Appellant removed the remains of the mobile home in 2017.

The FHAB provides that "[n]onconforming structures or uses shall be considered abandoned where such structures or uses have been discontinued for more than 12 months."

---

[3] As we are considering a motion for summary judgment by the Town, we view all facts in a light most favorable to the Appellant, as the non-moving party. White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted) (noting that we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits).

*Entry Regarding Motion*                                                                                    *Page **8** of **11***

*Down River Investments, LLC CU, No. 139-12-18 Vtec (EO on SJ motion) (Vt. Super. Ct. Envtl. Div. Mar. 6, 2021) (Durkin, J.)*

FHAB § 6.7(3). This bylaw is authorized by 24 V.S.A. § 4412 (7)(A)(i), which states that a municipality may regulate and prohibit expansion of nonconformities by determining a specific period of time that constitutes "abandonment or discontinuance" of a nonconforming use.

The term "discontinuance" does not require a showing of intent to abandon a nonconforming use or unenforceable zoning violation. Badger v. Town of Ferrisburgh, 168 Vt. 37, 40–41 (1998) (defining discontinuance as "cessation, without the kind of intent associated with abandonment"); *see also* Purvis North Willard Street, No. 88-7-19 Vtec, slip op. at 3–5 (Vt. Super. Ct. Envtl. Div. July 23, 2020) (Durkin, J.). In addition, [a]lthough a preexisting noncomplying structure may remain in place, once a nonconforming *use* of that structure is abandoned or discontinued, state law contemplates that a municipality may prohibit resumption of such use." Town of Brighton v. Griffin, 148 Vt. 264, 270 (1987) (citation omitted) (emphasis added); *see* Town of Chester v. Country Lounge, Inc., 135 Vt. 165, 167 (1977) ("The existence of a hollow shell does not give the defendant a vested right" to a preexisting nonconforming use).

In an analogous case, the Vermont Supreme Court held that an applicant's unused "[60] by [24] foot building shell" did not constitute a preexisting nonconforming use without "actual use." Town of Chester, 135 Vt. at 167 (stating that "a planned or intended use without substantial improvement of the premises" does not give the applicant a vested right); *see* Badger, 168 Vt. at 38–39 (stating that "involuntary inactivity" beyond the control of the applicant rendering an apartment unused for 22 months constituted a discontinuance); *see also* Chioffi v. City of Winooski, 165 Vt. 37, 42 (1996) (stating that where a period to restore a nonconforming use had expired, a landowner that purchases the property has no right in restoring the nonconforming use).

Here, where nothing but a the remaining floor structure, as well as plumbing, electrical, and septic hookups, remains on the property and the property is not being used for its intended purpose, we see no basis to conclude this does not constitute a discontinuance, given that more than 12 months has passed since the property was stripped to its "shell." Moreover, Appellant's argument that removal of the entire structure is required to show abandonment or discontinued use would run counter to the Legislature's policy encouraging the phasing out nonconforming

uses. Badger, 168 Vt. at 43 (noting that the "bright line" test that applies irrespective of intent aids subsequent purchasers in ascertaining whether a property is a nonconforming use); 15–17 Weston St., No. 40-3-19 Vtec, slip. op. at 10 (Vt. Super. Ct. Envtl. Div. Jan 22, 2021) (Durkin, J) (stating that it is "a goal of zoning is to gradually eliminate uses that do not conform with the current zoning regulations "because they are antecedent to the zoning regulations"). We therefore **GRANT** the Town's motion for summary judgment on Question 4 of Appellant's Statement of Questions and **DISMISS** Appellant's Question 4.

### IV.      *Question 5: Whether the Town inconsistently applied the FHAB.*

Appellant's Question 5 asks whether "the Town inconsistently applied Sharon's Flood Hazard Area Bylaw(s) and permitted another neighboring landowner to construct and/or maintain a residential structure in the designated Fluvial Erosion Hazard area." The Town argues that consideration of neighboring landowners' conditional use permits is irrelevant to the scope of this appeal. The Town also raises the issue that Appellant has not identified or produced supporting documentation concerning what permits the neighboring landowners applied for and received, whether the other properties were preexisting nonconforming structures or uses, or what type of development was occurring.[4]

Normally, arguments founded upon generalized comparisons to similarly situated neighbors do not constitute a cognizable legal basis for arguing a use is a preexisting nonconforming use, unless Appellant intended to make a constitutional equal protection argument. *See* In re Letourneau, 168 Vt. 539, 549 (1998) (regarding the required showing in an enforcement context as to selective treatment); *see also* In re Valois Airplane Storage Application, No. 254-11-07 Vtec, slip op. at 10–11 (Vt. Envtl. Ct. Sept. 23, 2008) (Wright, J.). This requires a landowner to "show more than that the municipality has failed to enforce the zoning ordinance in similar circumstances. The landowner must show both that the person, compared with others similarly situated, was selectively treated; and that the selective treatment was based on

---

[4] Appellant has identified a "Lupton Subdivision" and "Densmore property" but has provided no specifics or supporting documentation regarding these properties or their respective relevant permits. In Appellant's Affidavit, another landowner is mentioned as having constructed a structure in the designated FEH area. Appellant, however, provides few specifics concerning the application and no supporting documentation.

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure." In re: Appeal of R.L. Vallee, Inc., No. 90-5-98 Vtec, slip op. at 3 (Vt. Envtl. Ct. May 20, 1999) (Wright, J.).

Here, Appellant has not provided sufficient information concerning the neighboring permits. Indeed, this Court is not even aware of whether the other permits were conditional use permits that implicated the FHAB. To show selective enforcement, "it is necessary to compare the Town's failure to bring an enforcement action against another violation with its decision to bring an enforcement action against Appellant, in circumstances similar to that in the present case *and* that the decision to enforce against the Appellant was motivated by impermissible considerations." In re Appeal of Allen Mulheron, Nos. 172-8-00 Vtec and 217-9-00 Vtec, slip op. at 6 (Vt. Super. Jan. 16, 2002) (Wright, J.) (emphasis in original). Here, Appellant does not provide a sufficient legal basis with evidentiary support for concluding the Town engaged in selective enforcement. We therefore **GRANT** the Town's motion for summary judgment on Question 5 of Appellant's Statement of Questions and **DISMISS** Appellant's Question 5.

### Conclusions of Law

For the reasons stated above, we **DISMISS** Questions 2–5 of Appellant's Statement of Questions and **GRANT** the Town's motion for summary judgment. Given that our conclusions here result in a denial of the pending application on all Questions that remain, we hereby enter judgment in the Town's favor and **AFFIRM** the November 23, 2018, DRB's decision to deny Appellant's conditional use permit.

This concludes the current proceedings before this Court. A Judgment Order accompanies this Decision.

So Ordered.

Electronically signed on April 6, 2021, at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

*Entry Regarding Motion*                                                                                  *Page **11** of **11***

*Down River Investments, LLC CU*, No. 139-12-18 Vtec (EO on SJ motion) (*Vt. Super. Ct. Envtl. Div. Mar. 6, 2021*) (Durkin, J.)